# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **B.E.**

**No. 21-0792** (Kanawha County 19-JA-639)

## MEMORANDUM DECISION

Petitioner Mother J.L., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's September 2, 2021, order terminating her parental rights to B.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem, Bryan B. Escue, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied with her improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner tested positive for Subutex and benzodiazepines shortly after giving birth to A.D. in September of 2019.[2] At the time, B.E. was four years old. The DHHR further alleged that petitioner tested positive for methamphetamine, morphine, fentanyl, heroin, and Subutex during her pregnancy.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] A.D. was originally referred to as K.B. in the proceedings below. On appeal to this Court, petitioner did not include A.D. in the style of her brief or otherwise include any specific argument in regard to that child. As such, the termination of her parental rights to A.D. is not at issue in this appeal.

Following birth, A.D. remained in the hospital for two weeks to undergo treatment for Neonatal Abstinence Syndrome. When A.D. was discharged on October 4, 2019, the child was placed with the paternal grandmother because petitioner "was unable to be located since leaving the hospital" following the child's birth. The DHHR asserted that petitioner gave Child Protective Services ("CPS") an address that did not exist and would not answer the door at a second address. Further, the DHHR alleged that petitioner "did not return to claim the infant respondent upon discharge." Finally, the DHHR alleged that CPS offered petitioner services for approximately one year prior to the filing of the petition to address abuse and neglect perpetrated against B.E. As such, the DHHR alleged that petitioner abused and neglected both A.D. and B.E. by virtue of her substance abuse and her failure to provide them with necessary food, clothing, supervision, and housing. Following the petition's filing, petitioner waived her preliminary hearing.

At an adjudicatory hearing in February of 2020, petitioner stipulated to abusing drugs during her pregnancy. Thereafter, the circuit court granted her an improvement period. It appears from the limited record on appeal that B.E. was returned to petitioner's physical custody at some point during this improvement period.[3] At a review hearing in July of 2020, the court found that petitioner was substantially complying with the terms of her improvement period. However, according to a court summary from August of 2020, petitioner was "taken into police custody on [July 20, 2020,] as a result of appearing to be impaired." According to the record, petitioner "overdosed and . . . was arrested for felony child abuse." Upon petitioner's arrest, B.E. was again removed from her custody and placed back into foster care. Based upon these facts, the DHHR moved for petitioner's improvement period to be terminated and the matter to be set for disposition. At a review hearing on August 10, 2020, the court found that petitioner's improvement period had expired and set the matter for disposition.

In November of 2020, the DHHR filed a court summary that indicated petitioner had not submitted to any drug screens since the prior hearing. As such, the DHHR sought the termination of petitioner's parental rights. In January of 2021, the DHHR filed a court summary asserting that petitioner was not fully compliant with drug screens or supervised visitation. Additionally, both a visitation supervisor and A.D.'s foster parent reported that petitioner sounded as if she were slurring her words on occasion. According to this report, both the DHHR and the guardian recommended termination of petitioner's parental rights.

In February of 2021, the court held a dispositional hearing. Petitioner did not appear for the hearing, but she was represented by counsel. During the hearing, the DHHR presented evidence of petitioner's noncompliance with services. According to a DHHR employee, petitioner missed two drug screens in December of 2020 and did not screen at all in January of 2021. The witness also indicated that petitioner had been receiving unsupervised visits with the child, but that petitioner "stopped calling for the visits." Further, the witness described an incident from December 19, 2020, in which the DHHR visited petitioner's home. Upon arrival, petitioner's husband was "screaming and yelling" while petitioner slept nearby on a couch. According to the witness, when the DHHR asked to speak with petitioner, the husband stated that "there is no waking her up." The witness confirmed that petitioner was not woken up by the husband's yelling.

---

[3]A.D. was not returned to petitioner's physical custody along with B.E. Instead, the record shows that A.D. remained in the same foster home throughout the proceedings.

2

Based on the evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because of her insufficient efforts during the proceedings and her failure to follow through with the reasonable family case plan. The court also found that the child's best interests required termination of petitioner's parental rights.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the court erred in terminating her parental rights because she was making progress in her improvement period. In support, petitioner asserts that she participated in services, visits with the child went well, she participated in a drug treatment program, and she passed her drug screens. As such, petitioner argues that there was no reason not to allow her more time to complete her improvement period or grant her a post-dispositional improvement period. While it may be true that petitioner made some progress in her post-adjudicatory improvement period, she ignores important facts that support the termination of her parental rights.

As the record shows, despite the fact that petitioner passed some screens and participated in substance abuse treatment, she continued to abuse drugs throughout the proceedings. Petitioner failed to submit to two screens in December of 2020 and did not screen for the entirety of January of 2021, thereby precluding the circuit court from determining if she had, in fact, ceased abusing substances. Further, the evidence shows that the DHHR suspected petitioner was under the influence during a home visit, and petitioner was arrested for being impaired during her improvement period, which resulted in the second removal of the child from her care. Petitioner also ignores the fact that her visits with the child ceased because she simply stopped contacting providers in order to attend. While petitioner chooses to highlight portions of the record that

---

[4]The child was placed in the custody of the father with a permanency plan to remain in his care.

demonstrate some compliance, she fails to acknowledge the overwhelming evidence of her noncompliance and continued substance abuse.

Further, petitioner's argument that she should have been entitled to additional time under an improvement period is unavailing. By disposition, the case had been ongoing for approximately sixteen months, yet petitioner was in no better position than she was when the case began. Despite her minimal compliance with some services, including substance abuse treatment, petitioner continued to abuse drugs and was, in fact, arrested for child abuse as a result of her continued substance abuse. We have previously explained as follows:

> Although it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). Petitioner had ample opportunity to fully comply with services and remedy the conditions of abuse and neglect, yet failed to do so. Accordingly, we find that she is entitled to no relief.

Finally, petitioner argues that termination of her rights was unnecessary because the child has been placed in the father's home. We have explained, however, that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Because the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare, termination was appropriate under West Virginia Code § 49-4-604(c)(6). On appeal, petitioner does not challenge these findings. Further, we have explained that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 2, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment